## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **RALPH RAMIREZ AND JOSE LUIS MENDEZ,** on behalf of themselves, and all other plaintiffs similarly situated, known and unknown, | ) )  **N♀.** 22-cv- )  ) |
| Plaintiffs, | )  **Hon. Judge** )  **U.S. District Court Judge, Presiding** ) |
| v. | )  Hon. Judge )  Magistrate Judge |
| **DUBOIS TREE SERVICE, LLC, A COLORADO LIMITED LIABILITY COMPANY AND RONALD LEE STARR, INDIVIDUALLY** | ) )  ) )  ***JURY DEMAND*** ) |
| Defendants. | |

## COMPLAINT

NOW COME Plaintiffs, **RALPH RAMIREZ AND JOSE LUIS MENDEZ,** ("Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and all other Plaintiffs similarly situated, by and through their attorneys, John W. Billhorn and Samuel D. Engelson of Billhorn Law Firm, and for their Complaint against Defendants, **DUBOIS TREE SERVICE, LLC, A COLORADO LIMITED LIABILITY COMPANY AND RONALD LEE STARR, INDIVIDUALLY** (the "Defendants" or "DTS"), state as follows:

## I.    NATURE OF ACTION

1.    This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq* ("COMPS") and the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.*

## II.    JURISDICTION AND VENUE

2.      Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Colorado statutory claims, pursuant to 28 U.S.C. §1367.

3.      Venue lies in the District of Colorado in that during all times relevant to the working/employment relationship, Plaintiffs performed work in this district and is a resident of this district and Defendants are or were engaged in business in this district.

## III.    THE PARTIES

4.      Defendant, **DUBOIS TREE SERVICE, LLC** ("DTS") is a Colorado limited liability company that owns and operates a landscaping company. DTS performs landscaping and related services across the Denver-metro area and other locations in Colorado.[1]

5.      DTS performs various landscaping services, including tree trimming and removal, general landscaping and snow removal for residential and commercial customers.

6.      DTS's primary business address is 1070 Ammons St. in Lakewood, Colorado.

7.      DTS  is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii).

8.      During all relevant times, DTS was acting directly or indirectly in the interest of the employer in relation to the worker/employee Plaintiffs and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

---

[1] See https://duboistreeservicellc.com/

9.      DTS, through Ronald Starr and other management employees, oversaw all operations in Colorado, including business strategy, worker/employee management and daily operations.

10.     DTS was and is responsible for assigning tasks to workers, creating and distributing schedules, staff supervision, wage policies and otherwise oversaw all aspects of DTS's business operations and customer interactions.

11.     Plaintiffs were directed to, and did, communicate all work/employment issues, including the wage and hour violations asserted herein to DTS. DTS in turn responded to those communications with the authority described herein.

12.     Defendant **RONALD LEE STARR** (hereinafter referred to individually as "Starr") is the owner, President, primary manager and primary decision maker of DTS (collectively, all Defendants are referred to as "DTS"). Starr's primary address is 1070 Ammons St. in Lakewood, Colorado.

13.     In his capacity as owner, President and manager of DTS, Starr was vested with the authority to implement and carry out the wage and hour practices of DTS.

14.     Starr acted as the manager of DTS and was responsible for assigning projects, creating and distributing schedules, project supervision, and oversaw all aspects of DTS's landscaping business operations and client interactions.

15.     Plaintiffs were directed to, and did, communicate all work/employment issues, including the wage and hour violations asserted herein, to Starr and Starr in turn responded to those communications with the authority described herein.

16.    Thus, at all times relevant hereto Starr was acting directly or indirectly in the interest of the employer in relation to the worker/employee Plaintiffs and therefore as defined under both the federal and state statutes relied upon, is an "employer".

17.    Plaintiff, **RALPH RAMIREZ,** is a former landscaper and laborer worker of Defendants.

18.    Ramirez performed duties related to landscaping and groundskeeping, including trimming and removing trees, moving lawns, planting trees, bushes, flowers, removing snow in winter, etc. During weekend shifts and assignments, Ramirez performed additional duties such as minor mechanical work on company equipment, welding and firewood chopping.

19.    Ramirez was consistently required to work more than 40 hours each week.

20.    Ramirez was not paid overtime premiums of one and one-half his regular rate of pay for hours worked over 40 in individual work weeks.

21.    Ramirez was paid only his straight time hourly rate for the first 40 hours worked each week.

22.    Ramirez did not receive any compensation, including regular or overtime wages, for hours worked over 40 in individual work weeks. As such Ramirez did not receive straight time or overtime wages for hours worked in excess of 40 in individual work weeks.

23.    Additionally, DTS did not compensate Ramirez for purported thirty (30) minute meal breaks each shift and subtracted 30 minutes of pay from each shift. However, Ramirez was regularly interrupted during his meal breaks and required by DTS management, including Starr, to return to work but was not paid for that time.

24.     Due to the demands of Ramirez's job, Ramirez was either unable to take a 30-minute meal break at all or was interrupted during his break and required to return to work by Defendants' management employees, such that Ramirez should have been paid for that time.

25.     As such, Ramirez was required to perform work that was not recorded by DTS – or work off the clock. Ramirez was not compensated for work performed "off the clock" during his interrupted meal breaks, resulting in additional unpaid regular and overtime wages.

26.     During the duration of Ramirez's working relationship with DTS, DTS classified Ramirez as a 1099 independent contractor and compensated him on an hourly basis at only the straight time rate of pay for all hours worked each week, including those over 40 in individual work weeks.

27.     Ramirez alleges DTS's treatment of him as a 1099 independent contractor was improper and illegal in violation of federal and state law.

28.     Ramirez worked over 40 hours in many work weeks he worked for Defendants and was not paid regular or overtime wages for hours worked over 40 in individual work weeks.

29.     Defendants illegally failed to compensate Ramirez regular and overtime pay for hours worked over 40 per work week.

30.     Plaintiff, **JOSE LUIS MENDEZ,** is a former landscaper and laborer worker of Defendants.

31.     Mendez performed duties related to landscaping and groundskeeping, including trimming and removing trees, moving lawns, planting trees, bushes, flowers, removing snow in winter, etc. During weekend shifts and assignments, Mendez performed additional duties such as minor mechanical work on company equipment, welding and firewood chopping.

5

32.     Mendez was consistently required to work more than 40 hours each week.

33.     Mendez was not paid overtime premiums of one and one-half his regular rate of pay for hours worked over 40 in individual work weeks.

34.     Mendez was paid only his straight time hourly rate for the first 40 hours worked each week.

35.     Mendez did not receive any compensation, including regular or overtime wages, for hours worked over 40 in individual work weeks. As such Mendez did not receive straight time or overtime wages for hours worked in excess of 40 in individual work weeks.

36.     Additionally, DTS did not compensate Mendez for purported thirty (30) minute meal breaks each shift and subtracted 30 minutes of pay from each shift. However, Mendez was regularly interrupted during his meal breaks and required by DTS management, including Starr, to return to work but was not paid for that time.

37.     Due to the demands of Mendez's job, Mendez was either unable to take a 30-minute meal break at all or was interrupted during his break and required to return to work by Defendants' management employees, such that Mendez should have been paid for that time.

38.     As such, Mendez was required to perform work that was not recorded by DTS – or work off the clock. Mendez was not compensated for work performed "off the clock" during his interrupted meal breaks, resulting in additional unpaid regular and overtime wages.

39.     DTS failed to pay Mendez overtime wages even though Mendez was classified as an hourly W2 employee.

40.     DTS never represented or advised Mendez that he was exempt from overtime or that DTS was claiming a salary exemption as to Mendez.

41.     Defendants failed to compensate Plaintiffs regular and overtime wages for hours worked over 40 per work week, such that Plaintiffs are owed the entire 1.5x rate for hours worked over 40.

42.     Plaintiffs worked over 40 hours in many work weeks they worked for Defendants and were not paid their straight time wages or overtime premiums of one and one-half their regular rates of pay for such hours.

43.     DTS should have compensated Plaintiffs on an hourly basis at the entire one and one-half rate of pay for all hours worked over 40 in individual work weeks.

44.     Plaintiffs are owed their entire 1.5x rate of pay for all hours worked over 40 in individual work weeks.

45.     Furthermore, DTS failed to pay Plaintiffs and members of the Plaintiff Class wages for work performed off the clock during interrupted meal breaks, resulting in additional unpaid wages.

46.     Upon information and belief, DTS compensated all hourly laborers in the same or similar manner as Plaintiffs by failing to pay regular and overtime wages for hours worked in excess of 40 in individual work weeks through the practices described herein.

47.     DTS's conduct, practices and policies as alleged herein were in violation of the federal and state laws relied upon herein.

48.     All other unnamed Plaintiffs, known and unknown ("members of the Plaintiff Class", "Plaintiff Class" or "similarly situated Plaintiffs"), are past or present workers who were:

a)     paid only straight time hourly wages for the first 40 hours worked each week and were not paid regular or overtime wages for hours worked in excess of 40 in individual work weeks;

b)      required to work off the clock during interrupted meal breaks and were not paid for the unrecorded work time; and

c)     W2 employees not receiving overtime wages; or

d)     improperly classified as 1099 independent contractors and did not receive overtime wages.

49.     As an workers/employee(s) performing duties for an enterprise engaged in commerce, the named Plaintiffs and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

50.     As a result of the common policies described above, Plaintiffs and members of the Plaintiff Class were denied overtime pay for work in excess of 40 hours in a work week.

51.     Common questions of law exist among the claims of Plaintiffs and members of the Plaintiff Class in that all laborer claims are premised upon non-payment of any wages for hours worked over 40 in a week or for time worked during meal breaks and rest upon challenge(s) of any overtime exemptions and 1099 independent contractor status claimed by DTS.

## IV.    STATUTORY VIOLATIONS

### Collective Action Under the Fair Labor Standards Act

52.   Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiffs as an opt-in representative or collective action, on behalf of themselves and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.*, to recover unpaid overtime wages and additional damages. Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

### Colorado Overtime and Minimum Pay Standards Order, #38

53.   Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq.*, Count IV of this action is brought by Plaintiffs to recover unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiffs herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

### Colorado Wage Act

54.   Pursuant to the Colorado Wage Act, §8-4-101, *et seq.*, C.R.S., Count V of this action is brought by Plaintiffs to recover earned, vested and determinable unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Count V alleges willful violation of the CWA and seeks additional statutory damages. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiffs herein under the CWA are proper for certification under Federal Rule of Civil Procedure 23.

## V.    FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

55.    Plaintiffs, at all times pertinent to the cause of action, were employed by or otherwise worked for DTS, without regard to any purported 1099 independent contractor relationship claimed by DTS as to Ramirez.

56.    Plaintiffs' work as laborers and landscapers was integral and indispensable to DTS's landscaping business. Without landscapers such as Plaintiffs, DTS would be unable to function or otherwise conduct a landscaping business.

57.    Plaintiff Ramirez worked for DTS as a landscaper and laborer from approximately October 2021 to July 2022.

58.    When Ramirez was hired by DTS, he was advised by DTS and Starr that he would be paid $25 per hour.

59.    While Ramirez worked for DTS, he was classified by DTS as a 1099 independent contractor.

60.    Plaintiff Mendez worked for DTS as a landscaper and laborer from approximately December 2020 to February 2022.

61.    Mendez was paid $20 at the start of his employment with DTS. Mendez later received a raise to $25 per hour. When Mendez was hired by DTS, he was advised by DTS and Starr that he would be paid $20, and later $25, per hour.

62.    While Mendez worked for DTS, he was classified by DTS as a W2 employee.

63.    Plaintiffs' jobs as landscapers and laborers included driving to and from DTS's warehouse to various client sites as assigned, trim and remove trees, mow lawns, plant trees, bushes, flowers, remove snow in winter, and other related duties.

64.    Plaintiffs worked at various job sites in the Denver-metro area and across Colorado.

65.    Ramirez was paid an hourly rate of $25 per hour. Mendez was paid hourly rates of $20 and $25 per hour.

66.    Plaintiffs were paid only up to the first 40 hours worked each week.

67.    Plaintiffs' weekly compensation equaled $1,000 per week, based on 40 hours of work at $25 per hour.

68.    In the case of Mendez at the beginning of his employment with DTS, Mendez's weekly compensation equaled $800 per week, based on 40 hours of work at $20 per hour.

69.    Plaintiffs were paid weekly.

70.    Due to DTS's classification of Ramirez as a 1099 independent contractor, DTS paid Ramirez via handwritten company check drawn on DTS's U.S. Bank operating account.

71.    The handwritten company checks provided to Ramirez each week were issued by Dubois Tree Service, LLC, and listed an address of P.O. Box 1958, Wheat Ridge, Colorado. The checks were signed by Ronald Starr.

72.    Due to DTS's classification of Mendez as a W2 employee, Mendez was paid via payroll check.

73.    Plaintiffs typically worked approximately 45 to 50 hours per week.

74.    Generally, DTS did not record the work hours of Plaintiffs or other landscapers and laborers through any defined timekeeping system or policy.

75.    Ramirez kept his own, contemporaneous records of his work hours on his phone in the absence of a proper timekeeping system implemented by DTS.

76.    Typically, Plaintiffs arrived at DTS's warehouse/shop at about 7:30 a.m. to load equipment and supplies into company vehicles. Plaintiffs usually left the warehouse for the job site at about 8:00 a.m.

77.    Plaintiffs usually worked from 7:30 a.m. until approximately 7:00 p.m. This includes Plaintiffs' time spent at DTS's shop before and after work performed at client job sties relating to loading/unloading vehicles, preparing/cleaning equipment and vehicles and stocking/restocking supplies.

78.    Plaintiffs worked Monday through Friday. At times, Plaintiffs also worked Saturdays. On Saturdays, Plaintiffs typically worked 8 to 10 hours (with varying start/end times). Sometimes, Saturday shifts included additional job duties such as mechanical repair work on company equipment, chopping firewood and other duties in addition to regular landscaping duties.

79.    Plaintiffs often worked in excess their assigned schedule, because DTS required Plaintiffs to complete certain projects according to imposed deadlines, such that at times, Plaintiffs were not permitted to leave a work site until a job had sufficiently progressed to the satisfaction of DTS and Starr to be dismissed for the day or was entirely completed.

80.    At times, DTS and Ronald Starr required Plaintiffs to do "side jobs" for which Plaintiffs were paid separately than the handwritten or payroll checks received from DTS for regular wages.

81.    Time spent working on side jobs by Plaintiffs should have been included with all other hours worked for DTS each week. These hours worked by Plaintiffs on side jobs for Starr

should have been considered additional overtime hours. Plaintiffs are owed additional unpaid wages for sides work performed on behalf of DTS and Starr.

82.    Plaintiffs and members of the Plaintiff Class worked or work in excess of forty (40) hours in a workweek without pay for hours worked over forty (40) at a rate of time and one-half their regular hourly rate of pay, pursuant to the requirements of the federal and state statutes herein relied upon.

83.    Throughout Ramirez's time working for Defendants, Ramirez:

    a)    worked only for DTS and did so on an open-ended and permanent basis,

    b)    did not make a substantial investment in his own or DTS' business, facilities or equipment,

    c)    did not hold himself out to the community as a professional for hire in a particular trade or industry, including landscaping services,

    d)    had no opportunity for profit or loss based on the quality of his work,

    e)    did not control the nature of his work or work schedule or how his work was to be performed,

    f)    did not engage in open market competition with other contractors in the same or similar trade or industry, such as landscaping services; or

    g)    operate an independent business organization or operation.

84.    DTS improperly designated Ramirez as a 1099 independent contractor. As a result of DTS's misclassification of Ramirez as a 1099 independent contractor, DTS improperly denied Ramirez his full 1.5x rate for hours worked over 40 in individual work weeks and contributions to Social Security, Medicare, Medicaid, unemployment insurance, etc.

85. As a result of DTS's classification of Ramirez as a 1099 independent contractor, DTS paid fewer taxes to the Internal Revenue Service and Colorado Department of Revenue as they would have if Ramirez (and other workers) were properly classified as W2 employees.

86. Upon information and belief, DTS's characterization of Ramirez and other landscapers as 1099 independent contractors was implemented for the specific purpose of circumventing the overtime obligations of the FLSA, COMPS, and CWA and evading employment tax obligations imposed by the IRS and Colorado Department of Revenue.

87. As such, DTS's classification of Ramirez and other landscapers and laborers as 1099 independent contractors was illegal and improper.

88. Ramirez and similarly situated workers that were designated 1099 independent contractors by DTS should have been classified as W2 employees entitled to hourly pay, overtime premiums and other benefits of W2 employment, including employer contributions to Social Security, Medicare, Medicaid, etc.

89. DTS has, both in the past and presently, willfully employed or engaged in a working relationship with Plaintiffs and members of the Plaintiff Class as landscapers and laborers without providing compensation at a rate of one and one-half times their rates of pay for hours worked in excess of 40 in a workweek.

90. The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of DTS, in that DTS recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent DTS lacks the records required by 29 CFR Part 516, Plaintiffs

and members of the Plaintiff Class will be capable of providing reasonable estimates of that time, as permitted by law.

91.     The non-compliant practices as alleged herein are common to Plaintiffs and all other landscapers and laborers that were employed by or worked for DTS and Starr.

92.     Upon information and belief, Plaintiffs understood that other landscapers and laborers that worked for DTS (regardless of tax W2 or 1099 tax designation) were paid in the same or similar fashion as described above and were also denied overtime premiums for hours worked in excess of 40 in individual work weeks as a result of DTS's improper pay practices as alleged herein.

93.     Plaintiffs, and members of the Plaintiff Class on a regular basis worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half their hourly rates of pay for such hours pursuant to the requirements of the federal and state law.

94.     Plaintiffs and members of the Plaintiff Class were not exempt from the overtime provisions of the FLSA or COMPS.

95.     Likewise, Plaintiffs and members of the Plaintiff Class were entitled to the wage protections afforded by the CWA, which applies to timely payment of earned overtime wages. As such, Plaintiff and similarly situated worker/employees were and are entitled to overtime premiums of time and one-half their hourly rates of pay for hours worked over 40 in individual work weeks.

96.     The claims brought herein by the named Plaintiffs are based on non-compliant practices and policies implemented by DTS and are identical or similar to the claims of other past and present workers/employees who were subject to the same non-compliant policies and practices

alleged herein. Those past and present workers/employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

97.     Each of DTS's non-compliant and illegal practices alleged herein were executed willfully by DTS. DTS was at all times familiar with the provisions and requirements of the FLSA and CWA, including the overtime provisions. Through the conduct described and alleged by Plaintiffs herein, DTS willfully and intentionally violated the FLSA and CWA.

98.     Plaintiffs are owed additional compensation that has been improperly withheld by DTS, as well as additional damages available by law.

99.     Plaintiffs hereby demand payment by DTS of all unpaid regular and overtime wages that remain due within fourteen (14) days of DTS's receipt of service of this Complaint.

100.     This Complaint serves as a proper and recognized written demand for earned, vested compensation under the CWA, C.R.S. §8-4-109(3)(a). Plaintiffs' earned, vested but unpaid compensation may be tendered to undersigned counsel.

<u>**COUNT I**</u>

<u>**VIOLATION OF FAIR LABOR STANDARDS ACT**</u>

1-100.   Paragraphs 1 through 100 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 100 of this Count I.

101.     Plaintiffs, and members of the Plaintiff Class, were each an "employee" pursuant to 29 U.S.C. §203(e).

102.     Defendants were each an "employer" pursuant to 29 U.S.C. §203(d).

103.     Plaintiffs, and members of the Plaintiff Class, were not exempt from the maximum hours provisions of 29 U.S.C. §207.

104.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiffs, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in any week during the two (2) years preceding the filing of this action.

105.    Defendants have at all times relevant hereto failed and refused to pay compensation to their workers/employees, including the Named Plaintiffs herein and all other Plaintiffs similarly situated, known and unknown as described above.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)    prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)    Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and

(d)    such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-105.    Paragraphs 1 through 105 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 105 of Count II.

106.    DTS's actions as complained above were done with DTS's knowledge that the compensation policies and practices at issue were in violation of the FLSA, or with a reckless disregard for whether the policies and practices were in violation of the FLSA.

107.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to DTS, DTS possessed ample access to the regulations and statutory provisions relating to the state and federal laws, including the FLSA, recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

108.    Pursuant to the Fair Labor Standards Act, Plaintiffs and all other workers/employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT III

## LIQUIDATED DAMAGES
## UNDER THE FAIR LABOR STANDARDS ACT

1-108.  Paragraphs 1 through 108 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 108 of Count III.

109.    In denying Plaintiffs and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds.

110.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to DTS, DTS possessed ample access to the regulations and statutory provisions relating to the state and federal laws, including the FLSA, recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

111.    The Named Plaintiffs and all other past and present workers/employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)      liquidated damages equal to the amount of all unpaid compensation;

(b)      Plaintiffs' reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)      such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO OVERTIME
### AND MINIMUM PAY STANDARDS ORDER, #38

1-111.   Paragraphs 1 through 111 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 111 of this Count IV.

112.    As described in the foregoing paragraphs, Defendants' compensation policies and practices were in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*.

113.    Notwithstanding any purported 1099 independent contractor relationship claimed by DTS as to Ramirez or any other landscapers/laborers, Plaintiffs, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A).

114.    Plaintiffs were not exempt from overtime wage provisions of COMPS 7 CCR 1103-3.1, 4.1.

115.    Defendants were each an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

116.    Under COMPS 7 CCR 1103-4.1, for all weeks during which Plaintiffs and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

117.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of COMPS 7 CCR 1103-4.1.

118.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of overtime wages due an employee under the law shall be liable to the underpaid

employee or employees for the unpaid balance of the full amount of overtime wages due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs, on behalf of themselves and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)    such additional relief the Court deems appropriate under the circumstances.

### COUNT V

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO WAGE ACT

1-118.  Paragraphs 1 through 118 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 118 of this Count V.

119.    As described in the foregoing paragraphs, Defendants' compensation policies and practices were in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq*.

120.    The CWA defines wages as "[a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time". Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

121.    Plaintiffs, and members of the Plaintiff Class, were each an "employee" under CWA, C.R.S. §8-104-101(5) and were not exempt from the CWA's protections.

122.    Defendants were each an "employer" as defined by CWA, C.R.S. §8-104-101(6) and were not exempt from compliance with the CWA.

123.    Plaintiffs and members of the Plaintiff Class worked hours in excess of 40 in individual work weeks. Pursuant to CWA, C.R.S. §8-4-101(14)(a)(II)-(III), Defendants were required pay Plaintiffs and members of the Plaintiff Class at time and one-half their regular hourly rates of pay for hours worked over 40 in individual work weeks.

124.    Once Plaintiffs and members of the Plaintiff Class worked hours over 40 in individual work weeks, they earned overtime compensation, although it was not paid. As such, the regular and overtime wages for which Plaintiffs and members of the Plaintiff Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

125.    Plaintiffs and members of the Plaintiff Class did not receive regular or overtime wages at of one and one-half time their regular rates of pay for hours worked over 40 in individual work weeks.

126.    Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

127.    Plaintiffs' Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a) for unpaid overtime wages on behalf of themselves and members of the Plaintiff Class.

128.    Should DTS fail to tender the demanded overtime compensation due to Plaintiffs and members of the Plaintiff Class pursuant to the CWA within fourteen (14) days, Plaintiffs and members of the Plaintiff Class will be entitled to recover penalties described by to CWA, C.R.S. §8-4-109(3)(b) and (c).

129.    Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee(s) can prove that the employer's failure to pay wages due under the Act, each of the penalties set forth under CWA, C.R.S. §8-4-109(3)(b) shall increase by 50%.

130.    DTS's failure and refusal to pay earned overtime wages, as demanded in writing herein within the fourteen (14) day period described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

131.    Plaintiffs and members of the Plaintiff Class are owed all earned, unpaid regular and overtime wages and statutory penalties, including increased penalties for willful violations of the CWA.

132.    Per CWA, C.R.S. §8-4-110, Plaintiffs and members of the Plaintiff Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     unpaid, earned and vested overtime wages;

(b)      statutory penalties of 125% of the amount of wages due up to and including

$7,500; and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)      additional statutory penalties of 50% on top of the penalties prescribed by CWA,

§8-4-109(3)(b) for DTS's willful violation of the CWA;

(d)      Plaintiffs' reasonable attorneys' fees and Court costs incurred as a result of

Defendants' violations of the Colorado Wage Act; and

(f)      such additional relief the Court deems appropriate under the circumstances.

Respectfully submitted,

***Electronically Filed 09/07/2022***

<u>/s/ Samuel D. Engelson</u>
Samuel D. Engelson
Colorado Bar No: 57295

John William Billhorn
Attorneys for Plaintiff, and those similarly
situated, known and unknown

BILLHORN LAW FIRM
7900 E. Union Ave., Suite 1100
Denver, Colorado 80237
(720)-386-9006

53 W. Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312)-853-1450